## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LARRY GILLASPY and CONNIE SCORZA,
individually and as Husband and Wife;
RAYMOND G. VAUGHAN and VICKIE VAUGHAN,
individually and as Husband and Wife,

       Plaintiffs,

v.                                                                                    No. CIV-06-284 MV/CG

TOWN OF SILVER CITY; TERRY FORTENBERRY;
HAROLD STEVE MAY; GARY CLAUSS;
THOMAS NUPP; JUDITH WARD; JERRY HUCKABY;
RUBEN APODACA; MIKE ELEY; PETER RUSSELL;
STATE OF NEW MEXICO, REGULATION AND
LICENSING DEPARTMENT, CONSTRUCTION
INDUSTRIES DIVISION; EDWARD J. LOPEZ;
LISA D. MARTINEZ; JAIME GUZMAN; WAYNE DOTSON;
RICHARD ROMERO; GERALD LOUCK; RON LE CLAIR
WILLIAM R. HANKINS; MOGOLLON CORP.;
VIC TOPMILLER; SUN MOUNTAIN AMERICA, INC.;
CAROL THOMPSON dba THOMPSON REALTY/CENTURY 21;
ROBERT M. ROWLAND; ERNEST TERRAZAS, JR.,
dba TIMBERLAND CONSTRUCTION, aka TIMBERLAND
COUNTRY CONSTRUCTION; and DOES 19 through 50, inclusive,

       Defendants.

### MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on the Motion for Summary Judgment on Behalf

of Town of Silver City, Fortenberry, May, Clauss, Nupp, Ward, Huckaby, Eley and Russell (Doc.

No. 185, Filed May 10, 2007).  For the reasons stated below, the Motion will be **GRANTED in part**

and **DENIED in part**.  The Court will **DEFER** ruling on the state law claims.

**Background**

The Amended Complaint alleges thirty-eight causes of action against twenty-five named defendants.   (Doc. No. 112, filed March 7, 2007).   The Motion before the Court was filed by the Town of Silver City, the Town's Mayor, four members of the Town Council, and three Town employees ("the Town Defendants").   The Motion seeks summary judgment on the ten causes of action alleged against the Town Defendants.  Four of the causes of action, Nos. 1, 2, 3 and 36, allege federal law claims regarding the First Amendment, Substantive Due Process, Procedural Due Process, and Civil Rights Conspiracy.   The remainder of the causes of action against the Town Defendants are for state law claims.

**Excessive Use of Footnotes by Plaintiffs' Counsel**

The Town Defendants state that Plaintiffs' Response "has more material footnoted than contained within the brief itself, and therefore is subject to being stricken." (Reply at 1).  The Court agrees.  Plaintiffs' use of footnotes is excessive.  Not including section headers, Plaintiffs' Response contains approximately 302 lines of double-spaced text.   There are approximately 355 lines of text in the footnotes.   Converting the single-spaced, smaller font footnotes to double-spaced, 12 point font would put Plaintiffs' 23-page Response well over the 24-page limit.  *See* D.N.M.LR-Civ 7.7 and 10.1 (a response brief must not exceed 24 double-spaced pages; typewritten text must be at least 12 pitch).   Plaintiffs have not asked for permission to file an overlength brief.   The Court will, therefore, strike all of the footnotes in Plaintiffs' Response, except for the first footnote in which Plaintiffs dispute some of the Town Defendants' material facts.  *See TK-7 Corp. v. Estate of Barbouti*, 966 F.2d 578 (10th Cir. 1992) (striking entire brief containing excessive number of illegitimately shrunken footnotes and allowing party to refile a brief which complies with the Tenth

Circuit local rules); *Jones v. Rabanco*, 2006 WL 2583432, *3 (W.D. Wash. 2006) (striking all footnotes in brief).

**Legal Standard**

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). When applying this standard, a court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof. *Id.* A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor. *Id.*

**Undisputed Facts**

The Town Defendants allege the following material facts:

1.      On June 14, 2005, Plaintiff Connie Scorza appeared before the Silver City Town Council for the purpose of reading her statement to the council members.

2.      At the beginning of the public input portion, the participants were told that due to the number of individuals who had signed up to speak, the Council was going to limit each person to three minutes total speaking time.

3.      Ms. Scorza was the first person to speak at the podium, and acknowledged the time restriction and indicated that she would therefore reduce her presentation.

4.      At the end of Connie Scorza's three minutes, she was informed that her time was up.

5.      At the time Connie Scorza was informed that her time was up, the Mayor asked for a copy of her prepared statement so that the Town could look into the issues that she was complaining of.

6.      Connie Scorza continued to address the Mayor after she was told that her time was up, and then was told she was out of order.

7.      After being told she was out of order, she continued to address the crowd in general and announced that she would continue her statement outside.

(Memorandum at 3-4).  The Town Defendants attached a transcript of the Town Council meeting to support their statement of material facts.  Plaintiffs do not dispute these facts.  (Response at 2, n.1).

Plaintiffs dispute the Town Defendants' material fact No. 8 which states:

8.      Plaintiff Vaughn [sic] started his presentation, but *about mid-way, the crowd of supporters of plaintiffs disrupted the proceeding*, and the Mayor ended the public input section.

(Response at 2, n.1).  Plaintiffs contend that italicized phrase lacks any evidentiary basis and filed a videotape and transcript of the Town Council Meeting to support their contention.  (*Id.*).  Plaintiffs also contend that the Mayor interrupted Mr. Vaughan and the Council.  (*Id.*).

The Court reviewed the transcripts and the videotape.  Before Mr. Vaughan began speaking, the Mayor warned the audience that "If there is any more public outburst, the Public Input section is over.  Please act like adults."  Approximately one minute and ten seconds after Mr. Vaughan began speaking, members of the audience began shouting and applauding when Mr. Vaughan asked the Council "Are you guys working for Mr. Rowland?  Who's in charge here?"  The Mayor then

ended the public input section.

Plaintiffs also dispute the Town Defendants' material fact No. 9 which states:

9.      Plaintiff Connie Scorza then proceeded to go outside the room and present her entire statement to a television camera while on public property, the statement which was later broadcast over the public television system for the Town of Silver City.

(Response at 2, n.1).  Plaintiffs dispute material fact No. 9 because "[t]here is no proof of this in the Town's Motion."  (*Id.*).  The Town Defendants filed  a videotape of Plaintiff Scorza's press conference as a supplemental exhibit.  (*See* Doc. No. 213, filed June 26, 2007).  Plaintiffs did not challenge the supplemental exhibit.  The Court has reviewed the videotape of Plaintiff Scorza's press conference.

**Plaintiffs' First Amendment Claim**

Plaintiffs allege that the Town Defendants deprived them of their right to free speech during the public input section of two Town Council meetings, the first being on November 23, 2004, and the second on June 14, 2005.  (Amended Complaint at 14-21, ¶¶ 88-120).

The Court will deny the Town Defendants' motion for summary judgment as to the alleged civil rights deprivation at the November 23, 2004, Town Council meeting because the Town Defendants have not met their initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The Town Defendants have not presented any legal argument or material facts regarding the November 23, 2004, Town Council meeting.  (*See* Memorandum at 3-4).  The Town Defendants may file another motion for summary judgment on the alleged civil rights deprivation at the November 23, 2004, Town Council meeting.

Plaintiffs allege that the Town Defendants deprived them of their right to free speech during the Public Input portion of the June 14, 2005, Town Council meeting by (1) not allowing Plaintiffs to discuss certain subjects and (2) silencing Plaintiffs when they discussed topics that were not prohibited by the Town Defendants.  (Amended Complaint at 15-16, ¶¶ 94-94).  At the beginning of the Public Input portion of the Town Council meeting the Chairman stated:

> Next item on the agenda will be Public Input.  And before we get started, because of the several individuals that have signed up, I would like to make mention that the Town Council is not an appropriate forum for private disputes between neighbors, contractors and home owners or realtors and their clients.  Accordingly, it is my decision that only governmental issues will be discussed this evening.  No discussions of private disputes will be permitted. . . . The Council has also asked me to, as we decided back in, I believe it was, the January meeting of this year, the first meeting in January, to put a three-minute time period on your comments.

(Memorandum at Ex. A, Transcript of June 14, 2005, Town Council Meeting).

During the Public Input, Plaintiff Scorza discussed alleged problems with the Town's construction inspection procedures.  (Response at Ex. 1, Transcript of June 14, 2005, Town Council Meeting).  After the three minute time limit expired, the Chairman stated to Plaintiff Scorza "Your three minutes are up.  If you could please give us a copy of – the town manager your statement, we will look into the issues that you are complaining about." (Videotape of June 14, 2005, Town Council Meeting, Doc. No. 211, filed June 19, 2007).

The next speaker, Plaintiff Raymond Vaughan, discussed the Town's alleged failure to rescind occupancy permits until drainage problems were fixed, a sidewalk trip hazard, code enforcement and a "no trespassing" sign placed on a public easement.  (Response at Ex. 1, Transcript of June 14, 2005, Town Council Meeting).   Approximately one minute and 10 seconds into Plaintiff Vaughan's presentation, the Chairman terminated the Public Input

after members of the audience began applauding and shouting.  (Videotape of June 14, 2005,

Town Council Meeting, Doc. No. 211, filed June 19, 2007).

The Court assesses the regulation of free speech on government property according

to a three-step analytical framework:

> First, the court must determine whether the speech at issue is protected by the First Amendment.  If so, the court must then identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic.  Third, the court must assess whether the justifications  for exclusion from the relevant forum satisfy the requisite standard, e.g., whether a content-based restriction can survive strict scrutiny, whether a content-neutral restriction is a valid regulation of the time, place, or manner of speech, or whether a restriction in a nonpublic forum is reasonable.

*Wells v. City and County of Denver*, 257 F.3d 1132, 1138 (10th Cir. 2001).

The free speech at issue, Plaintiffs' complaints regarding the Town's inspection

procedures and their private disputes with others, is protected by the First Amendment.  With

limited exceptions, the protections of the Free Speech Clause extend to most speech.

*Summum v. City of Ogden*, 297 F.3d 995, 1001 (10th Cir. 2002) (*citing Chaplinsky v. New

Hampshire*, 315 U.S. 568, 571-72 (1942) (exceptions include the lewd and obscene, the

profane, the libelous, and the insulting or fighting words - those which by their very

utterance inflict injury or tend to incite an immediate breach of the peace)).

The next step is for the Court to identify the nature of the forum.  There are three

categories of fora, each with its own First Amendment standard: (1) the traditional public

forum, such as parks and sidewalks, where content-based and content-neutral restrictions

must survive strict scrutiny, i.e. they must be narrowly tailored to serve, respectively, a

compelling or significant government interest; (2) the designated public forum, which a state

creates by intentionally opening a non-traditional forum for public discourse, which is

subject to the same standard as the traditional public forum, but which the state is not required to indefinitely retain the open character of the forum; and (3) the nonpublic forum where control over access to the nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.  *Wells v. City and County of Denver*, 257 F.3d at 1138.

Plaintiffs and the Town Defendants disagree on which forum category the Public Input portion of the Town Council meeting properly belongs.  Plaintiffs contend that the Public Input portion is a "limited public forum" subject to the designated public forum standard.  (Response at 5-6).  Plaintiffs argue that the Town's restrictions were not content neutral and not narrowly tailored because the Town did not give any reasons or rationale for the restrictions.  (*Id.* at 6-9).  The Town Defendants argue that the Public Input portion of the Town Council meeting is a "limited public forum" and is subject to the same reasonableness standard as is the nonpublic forum.  (Reply at 4).  The Tenth Circuit recognized that there has been some confusion in the case law with some cases including "limited public forum" in the designated public forum and others categorizing it as a nonpublic forum.  *Summum v. Callaghan*, 130 F.3d 906, 914 (10th Cir. 1997).

"Under our precedent, it is not entirely clear whether a city council meeting should be treated as a 'designated public forum' or a 'limited public forum.'"  *Shero v. City of Grove, Oklahoma*, — F.3d —, 2007 WL 4376068 *4 (10th Cir. 2007).

> A "designated public forum" is created when the government "intentionally open[s] a nontraditional public forum for public discourse."  The government's action in excluding a member of a class to which a designated forum is made generally available is subject to strict scrutiny. . . . In a designated public forum, "the government may only impose content-neutral time, place, and manner restrictions that: (a) serve a significant government interest; (b) are narrowly tailored to advance

that interest; and (c) leave open ample alternative channels of communication."

*Id.*

> A "limited public forum," on the other hand, "arises where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum. Any government restriction on speech in a limited public forum must only be reasonable in light of the purpose served by the forum and be viewpoint neutral.

*Id.*

The Court need not decide whether the Town Council meeting is a designated public forum or a limited public forum because, for the reasons that follow, the time and content limitations on Plaintiffs' speeches satisfy the more stringent strict scrutiny standard.

Plaintiffs argue that the time and content restrictions are not content neutral stating "*For reasons unexplained* the Town's official policy making [sic] official, the Mayor, announced that certain 'personal' subjects would not be allowed, and that speech would be limited for the first time to three minutes." (Response at 7; *emphasis in original*). Plaintiffs support their argument by citing to the transcript and videotape of the June 14, 2005, Town Council Meeting. Plaintiffs also argue that the speech restrictions were not narrowly tailored to advance a significant government interest stating "The Town fails to make *any* showing here concerning the rationale for its new-announced restrictions, or that the restrictions were based on factual findings." (Response at 8-9; *emphasis in original*). The Court disagrees.

The Town Defendants placed a three-minute time limit on speakers during the Public Input portion of the Town Council meeting "due to the number of individuals who had signed up to speak." (Undisputed material fact No. 2, Memorandum at 3); *See Shero*, 2007 WL 4376068 *4 (three minute time limit imposed on plaintiff's speech at city council

meeting was a restriction appropriately designed to promote orderly and efficient meetings). The Chairman of the Town Council stated that the Town Council meeting "is not an appropriate forum for private disputes" and, therefore, "only governmental issues will be discussed this evening." (Memorandum at Ex. A, Transcript of of June 14, 2005, Town Council Meeting). Limiting the Public Input portion to governmental issues only and terminating the Public Input portion after warning and after members of the audience began shouting and applauding are appropriately designed restrictions to serve the Town's interest in conducting orderly and efficient meetings. *See See Shero*, 2007 WL 4376068 *4. At the end of Ms. Scorza's speech, the Mayor asked her to give a copy of her written statement to the Town Manager and stated they would look into the issues she was complaining about. *See id.* (plaintiff had ample alternative channels of communication available to him and utilized them by, among other things, appearing in a local newspaper and circulating flyers). Ms. Scorza then read her statement to a television camera outside the Town Council meeting. *See id.*

The Town's time and content restrictions for the Public Input portion of the Town Council meeting "(a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication." *See Shero v. City of Grove, Oklahoma*, — F.3d —, 2007 WL 4376068 *4 (10th Cir. 2007). Plaintiffs have not brought forth any specific facts showing a genuine issue for trial.

The Court will grant summary judgment in favor of the Town Defendants on that portion of Plaintiffs' First Cause of Action pertaining to the June 14, 2005, Town Council meeting.

**Plaintiffs' Substantive Due Process Claim**

Plaintiffs' Second Cause of Action alleges that the Town Defendants deprived Plaintiffs of their constitutionally protected property interests without due process by the following acts and omissions:

   a.     failure to provide reasonably competent residential building inspections;

   b.     issuance of approved final inspections;

   c.     issuance of an unrestricted, permanent Certificate of Occupancy for the Gillaspy/Scorza residence, when said residence suffered from serious and potentially life-threatening code violations;

   d.     conspiracy regarding the failure to enforce applicable building code requirements and not performing complete and proper inspections to insure compliance with applicable codes and ordinances prior to issuance of Certificate of Occupancy;

   e.     failure to enforce code and municipal ordinance violations and see that those violations were corrected;

   f.     conspiracy/failure to prevent encroachment upon and destruction of Town property by Defendant Rowland and issuance of Certificates of Occupancy for homes that did not meet the requirements of the applicable building codes;

   g.     conspiracy to defraud financing institutions and the Internal Revenue Service by prematurely issuing Certificates of Occupancy; and,

   h.     conspiracy regarding failure to enforce subdivision plat requirements and failure to rescind Certificates of Occupancy after announcing their intention of doing so.

(Amended Complaint at 21-14, ¶¶ 121-125).

"An arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process Clause." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006). "The 'ultimate' standard for determining whether there has been a

11

substantive due process violation is 'whether the challenged government action shocks the conscience of federal judges.'"  *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006).

> It is well settled that negligence is not sufficient to shock the conscience.  In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.  This is a high level of outrageousness.

*Camuglia v. City of Albuquerque*, 448 F.3d at 1222-1223.

The Town Defendants argue that the alleged acts and omissions are not conscience shocking.  (Memorandum at 7-9).  The Court agrees.  While the allegations, if true, may indicate negligence and, perhaps, intentional injury by the Town Defendants, they do not rise to the high level of outrageousness required to demonstrate a substantive due process violation.

Plaintiffs do not set forth any facts showing a genuine issue regarding whether the Town Defendants' acts and omissions shock the conscience.  (*See* Response at 11).  Instead, Plaintiffs argue that the "shocks the conscience" standard applies only to "gross, wrongful municipal conduct causing physical injury - not to a Section 1983 claim."  (*Id.*).  Plaintiffs are mistaken.

The "shocks the conscience" standard does apply to Section 1983 claims involving substantive due process violations related to the deprivation of property rights.  The paragraph above discussing the "shocks the conscience" standard is quoted from *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006), which pertained to an alleged deprivation of a property right.  In *Camuglia*, a restaurant owner brought a civil rights action against a city and a city restaurant inspector alleging that his substantive due process rights

12

were violated when the inspector temporarily closed the restaurant. *Id.* The Tenth Circuit held that the owner did not demonstrate a substantive due process violation because the conduct of the inspector did not shock the conscience. *Id.* at 1222-1223; *see also Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999) (any substantive due process claim for the deprivation of an individual's property right must shock the conscience).

The Court will grant summary judgment in favor of the Town Defendants on Plaintiffs' Second Cause of Action.

**Plaintiffs' Procedural Due Process Claim**

Plaintiffs' Third Cause of Action alleges that they have a federal constitutional right to an opportunity to be heard by the Town Defendants on their grievances regarding their residence and occurrences at the Subdivision. (Amended Complaint at 25, ¶ 127). Plaintiffs allege that the Town Defendants denied Plaintiffs procedural due process by:

    a.    denying Plaintiffs "any meaningful kind of hearing;"

    b.    denying Plaintiffs "any sort of meaningful procedural protections at such a hearing;"

    c.    "failing to act as they represented they would;" and,

    d.    "interrupting, silencing and verbally attacking Plaintiffs Scorza and Raymond G. Vaughan at the Town council Meetings mentioned above."

(Amended Complaint at 25-26, ¶¶ 126-131). In their Response, Plaintiffs state:

The thrust [of Plaintiffs'] procedural due process allegations against the Town is that, because the Council and its Members, lacking any sort of written ordinance or statute to guide them, *or to guide Plaintiffs*, lacked thereby a proper means by which to determine whether public speech at their limited "Public Input" section could or could not be legally restricted at the time, and the place, and in the manner in which it was done. As a result of this lack of guidance, Plaintiffs, Connie Scorza and Raymond G. Vaughan, fairly allege that they were deprived of a meaningful time, and a meaningful

13

manner, for being heard by the government body with policy-making jurisdiction over their issues. Fundamentally, therefore, in the absence of a written ordinance or statute limiting speech, the question is *quintessentially one of fact* for the trier-of-fact, as to (1) whether the restriction was content-neutral (Plaintiffs allege it was not, given its surprise, unwritten nature, and stifling effect on them), and (2) whether the restriction was closely tailored to serve an important interest of government (Plaintiffs allege it was not, but rather was tailored on the relative spur of the moment, in private [or at least unannounced], to silence anticipated and undesired content/viewpoint).

. . . .

Plaintiffs need not show a mere loss of a "property" interest by procedural flaw as claimed by the Town. . . . They must show *at minimum* the loss of a protected life, liberty or property interest – here, free speech. . . . The Plaintiffs' property losses stem from the **stifling of their avenues of redress** – by the Town Council – through its failure to *hear* (procedural due process) and therefore *act upon* (substantive due process) Plaintiffs' complaints.

(Response at 21; *emphasis in original*).

Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision. *See Mitchell v. City of Moore*, 218 F.3d 1190, 1198 (10th Cir. 2000). In determining whether a plaintiff was denied procedural due process, courts engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process? *Kirkland v. St. Vrain Valley School Dist. No. RE-1J*, 464 F.3d 1182, 1189 (10th Cir. 2006).

Plaintiffs argue that they were denied procedural due process on their protected interest of free speech. The protections of the Free Speech Clause extend to most speech. *See Summum v. City of Ogden*, 297 F.3d 995, 1001 (10th Cir. 2002). However, the Government may place restrictions on speech depending on the nature of the forum. *See Shero v. City of Grove, Oklahoma*, — F.3d —, 2007 WL 4376068 *4 (10th Cir. 2007). As

14

discussed above in connection with Plaintiffs' First Amendment claim, the Town Defendants' restrictions on Plaintiffs' speech at the Town Council meeting were appropriate. Furthermore, at the Town Council meeting, the Mayor indicated the Town Council would accept and consider written statements and did not indicate there would be any restrictions on written statements submitted to the Town Council. (*See* Videotape of June 14, 2005, Town Council Meeting, Doc. No. 211, filed June 19, 2007). Consequently, the Court concludes that the Town Council did not deprive Plaintiffs of a protected interest.

The Court will grant summary judgment in favor of the Town Defendants on that portion of Plaintiffs' procedural due process claim pertaining to the June 14, 2005, Town Council meeting.

The Court will deny the Town Defendants' motion for summary judgment as to the November 23, 2004, Town Council meeting because the Town Defendants have not met their initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Town Defendants have not presented any legal argument or material facts regarding the November 23, 2004, Town Council meeting. (*See* Memorandum at 3-4). The Town Defendants may file another motion for summary judgment on Plaintiffs' procedural due process claim regarding the November 23, 2004, Town Council meeting.

**Plaintiffs' Civil Rights Conspiracy Claim**

In the Thirty-Sixth Cause of Action, Plaintiffs allege that the Town Defendants and other Defendants entered into conspiracies "to violate state and federal law, in violation, *inter alia*, of Plaintiffs' rights under 42 U.S.C. § 1983." (Amended Complaint, ¶¶ 546-549

15

at 131-132).  The Town Defendants argue that Plaintiffs' conspiracy claim under 42 U.S.C.

§ 1985 must fail.  (Memorandum at 11-12).  Plaintiffs allege their conspiracy claim under

§ 1983, not § 1985.   (Response at 23; Amended Complaint, ¶¶ 546-549 at 131-132).

Because the Town Defendants' argument addresses § 1985 while the Plaintiffs' allege a

cause of action under § 1983, the Town Defendants have not met their initial burden of

demonstrating there is no genuine issue as to any material fact and that they are entitled to

judgment as a matter of law. The Court must, therefore, deny the Town Defendants' Motion

for Summary Judgment as to the Thirty-Sixth Cause of Action.

The Court has already dismissed this claim against one of the Defendants because

Plaintiffs failed to assert the violation of a federal right that would entitle them to a remedy

pursuant to 42 U.S.C. § 1983.  (*See* Doc. No. 224 at 5, filed October 5, 2007).  The Town

Defendants may file another motion for summary judgment on the Thirty-Sixth Cause of

Action.

**Plaintiffs' State Law Claims**

The Fourth through Eighth, and the Thirty-Eighth, Causes of Action allege state law

claims.  The Thirty-Eight Cause of Action alleges the Town Defendants entered into civil

conspiracies with other Defendants in this case.  Some of those Defendants have filed

motions to dismiss which are still pending.  In the interest of judicial economy, the Court

will defer ruling on whether to exercise supplemental jurisdiction over Plaintiffs' state law

claims against the Town Defendants until after ruling on the pending dispositive motions.

**IT IS SO ORDERED.**

Dated this 1st day of February, 2008.

_____
**MARTHA VÁZQUEZ**
**CHIEF UNITED STATES DISTRICT JUDGE**

*Attorney for Plaintiffs*

Douglas Craig Littlejohn
P.O. Box 1999
Silver City, NM 88062-1999

*Attorney for Intervenor Plaintiff Allstate Insurance Company*

Brian A. Thomas
901 Rio Grande Blvd. NW, Suite G-250
Albuquerque, NM 87104

*Attorney for Defendant Town of Silver City*

Lawrence R. White
P.O. Box 1209
Las Cruces, NM 88004

*Attorney for Defendant William R. Hankins*

Mark A. Filosa
P.O. Drawer 391
Truth or Consequences, NM 87901

*Attorney for Defendant Mogollon Corp.*

Mark A. Filosa
P.O. Drawer 391
Truth or Consequences, NM 87901

*Attorney for Defendant Vic Topmiller*

Thomas F. Stewart
P.O. Box 3046
Silver City, NM 88062

*Attorney for Defendant Sun Mountain America*

Thomas F. Stewart
P.O. Box 3046
Silver City, NM 88062

*Attorneys for Defendant Robert M. Rowland*

Meena H. Allen
Randal W. Roberts
11200 Lomas Blvd. NE, #210
Albuquerque, NM 87112

William Perkins
P.O. Box 1289
Silver City, NM 88062

*Attorney for Defendant State of New Mexico*

CaraLyn Banks
Thomas A. Sandenaw, Jr.
2951 Roadrunner Parkway
Las Cruces, NM 88011

*Attorney for Defendant Carol Thompson*

J. Monty Stevens
221 N. Kansas, #500 - Wells Fargo Plaza
El Paso, TX 79901